**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

KATARINA VAN DERHAM, CIELO JEAN
GIBSON, GABBY JEAN SAUCEDO,
MARIANA DAVALOS, and CHANTEL
ZALES,

                    Plaintiffs,

            - against -

BULLSEYE RESTAURANT, INC., d/b/a THE
SCENE, and DANIEL BRENNAN,

                 Defendants.

Case No. _____

**COMPLAINT**

(Jury Trial Demanded)

Plaintiffs KATARINA VAN DERHAM, CIELO JEAN GIBSON, GABBY JEAN
SAUCEDO, MARIANA DAVALOS, and CHANTEL ZALES, (collectively, "Plaintiffs"), by
and through their undersigned counsel, as and for their Complaint against defendants
BULLSEYE RESTAURANT, INC., d/b/a THE SCENE, and DANIEL BRENNAN,
(collectively, "Defendants"), respectfully allege as follows:

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants theft,
alteration, and unauthorized publication of sexually suggestive images of Plaintiffs, each of
whom are world renowned professional models, in order to promote their strip, The Scene, a
strip club located in Commack, New York.

2.      As detailed below, Defendants theft and unauthorized use of Plaintiffs' images,
photos and likenesses (collectively, "Images") constitutes, at minimum: a) violation of section 43
of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits false or misleading use of a person's
image for purposes of advertising; b) violation of New York Civil Rights Law §§ 50-51, which

- 1 -

protects a person's right to privacy and publicity; c) violation of New York's Deceptive Trade Practices Act (New York G.B.L. §349) which prohibits deceptive business practices; d) defamation, and; e) various common law torts.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any of the Clubs, via any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1).  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), and there is complete diversity of the parties.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.  No Plaintiff resides in New York.

6.      According to publicly available records, defendant Bullseye Restaurant, Inc. ("Bullseye") is a corporation formed under the laws of the state of New York, with a principal place of business located at 70 Vanderbilt Motor Parkway, Commack, New York 11725. According to publicly available records, defendant Daniel Brennan ("Burch") is the Principal of Bullseye.

7.      Venue is proper in the United States District Court for the Eastern District of New York because Suffolk County is Defendants' principal place of business.

8.      All parties have minimum contacts with Suffolk County, a significant portion of

the alleged causes of action arose and accrued in Suffolk County, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Suffolk County.

## PARTIES

*Plaintiffs*

9.     Plaintiff Katarina Van Derham ("Van Derham") is a well known professional model, and a resident of Los Angeles County, California.

10.     Plaintiff Cielo Jean ("CJ") Gibson ("Gibson") is a well known professional model, and a resident of Los Angeles County, California.

11.     Plaintiff Gabby Jeanne Saucedo ("Saucedo") is a well known professional model, and a resident of Riverside County, California.

12.     Plaintiff Mariana Davalos ("Davalos") is a well known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Chantel Zales ("Zales") is a well known professional model, and a resident of Orange County, California.

*Defendants*

14.     According to publicly available records, defendant Bullseye is a corporation organized under the laws of the State of New York, and has a principal place of business located at 70 Vanderbilt Motor Parkway, Commack, New York 11725. Bullseye owns and operates The Scene, a strip club located at 70 Vanderbilt Motor Parkway, Commack, New York 11725.

15.     Upon information and belief, defendant Daniel Brennan ("Brennan") is a resident of the State of New York. Brennan is identified by the New York State Liquor Authority as the Principal of Bullseye. Upon information and belief, Brennan, in his capacity as Principal of

Bullseye, maintains operational control over The Scene, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

16.     As set forth immediately below, each Plaintiff is an extremely well known professional model who earns her livelihood modeling and selling her Images to companies, magazines and individuals for the purpose of advertising products and services.

17.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

18.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at or endorsed Show Palace and/or Sin City.

19.     In the case of each and every Plaintiff, such appearance was false.

20.     Moreover, in each and every case, this misappropriation occurred without any of the Plaintiffs' knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

*Plaintiffs' Backgrounds and Careers*

21.     Van Derham is a successful model, actress, philanthropist, and entrepreneur.  As a model, Van Derham has graced over 60 magazine covers and appeared in over 600 media outlets including CNN, FOX, and NBC.  She has appeared in 17 national and international print and TV commercials, has been voted one of the 100 sexiest women in the world by magazines on three

different continents, and has made history by being the only St. Pauli Girl spokesmodel to ever be re-elected.  As an actress, Van Derham has appeared on "Entourage", "Unbelievable, "15 Minutes," "Redline," "CSI" and "Monk," and in music videos for Bobby Brown, Ja Rule, Andy, Big and Rich, among others.  Katarina is a founder, CEO, and Editor-in-Chief of classic, glamour lifestyle magazine VIVA GLAM, established in 2012.  Her well respected status gets her invited as a judge of model contests and beauty pageants around the world.  She has more than 39,000 Instagram followers.[1]

22.     That we know of, Van Derham is depicted in the photos in Exhibit "A" to promote The Scene on its Facebook and Instagram pages.  These Images depicts Van Derham in a sexually suggestive outfit and were intentionally altered to make it appear that Van Derham was either a stripper working at The Scene, or endorsed the Club.

23.     Van Derham has never been employed at The Scene, has never been hired to endorse The Scene, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

24.     Gibson is an extremely successful model who got her start in the industry when she won the *Import Turner* magazine Model Search.  Gibson has a massive motor sport following, and is currently the model for the Falken Drift Team and SBT, Inc. (Short Block Technologies), as well as being a Top Rank Boxing model.  Gibson has been seen in the pages of *FHM*, *American Curves* (cover), *Supreme, MuscleMag International* and *Muscle & Fitness*, and has over 48,000 Instagram followers.

25.     That we know of, Gibson is depicted in the photo in Exhibit "B", which was published on The Scene's Facebook page.  This Image depicts Gibson in a sexually suggestive

---

[1] In the modeling industry, the number of online followers a model has is a strong indication of her popularity and, thus, earning potential.

outfit, and was intentionally altered to make it appear that Gibson was either a stripper working at The Scene, or that she endorsed the Club.

26.    Gibson has never been employed at The Scene, has never been hired to endorse The Scene, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

27.    Saucedo started her career as a cover model for *Super Street* and *Import Tuner* magazines. She later became a feature model for UGO.com and IGN.com, and has been sponsored by the skateboarding company "sk8mafia," which used Saucedo's imagery on their skateboards.  Most recently, Saucedo has shot for and appeared on Playboy TV.

28.    That we know of, Saucedo is depicted in the photo in Exhibit "C" to promote The Scene on its Facebook page.  This Image depicts Saucedo in a sexually suggestive outfit and was intentionally altered to make it appear that Saucedo was either a stripper working at The Scene, or endorsed the Club.

29.    Saucedo has never been employed at The Scene, has never been hired to endorse The Scene, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

30.    Davalos is a model who has a burgeoning career in the talent industry.  She has over 175,000 Instagram followers and has a tremendous Latin American and international following with 250,000 Facebook followers.

31.    That we know of, Davalos is depicted in the photos in Exhibit "D" to promote The Scene on its webpage and Facebook page. These Images show Davalos in a sexually suggestive outfit and were intentionally altered to make it appear that Davalos was either a stripper working at The Scene, or endorsed the Club.

32.     Davalos has never been employed at The Scene, has never been hired to endorse The Scene, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

33.     Zales is an American model, actress and social media phenomena who has been featured in *Maxim*, *FHM* (in the United States, Thailand, Norway, and the Phillipines), *Lowrider* (cover), *Koncept*, *Kassanova*, *Show*, *Glam Jam*, *Hush Hush*, *Kaboom!*, GuySpeed.com and Venus Zine.  Zales has also been featured in catalogs and campaigns such as for companies such as Gila River Casino, Lone Butte Burger, Verona Chophouse, American Bandstand Express, Apple, Sassimi Spa, Rachelle's Salon and The American Heart Association. As an actress, Zale has appeared in over ten films, including *Piranha 3D* and *Young Americans*, and has a number of TV appearances to her credit including commercial for Pepsi, Bad Boy Fight Night, APS Electric and Acura of Tempe.  Zales is the Brand Ambassador for Shredz fitness clothing. She has over 3.3 million Instagram followers.

34.     That we know of, Zales is depicted in the photos in Exhibit "E" to promote The Scene on its Facebook page. This Image shows Zales in a sexually suggestive outfit, including a Los Angeles Dodgers t-shirt, in order to promote a New York Mets versus Los Angeles Dodgers game viewing at The Scene.  The Image was intentionally altered to make it appear that Zales was either a stripper working at The Scene, or endorsed the Club.

35.     Zales has never been employed at The Scene, has never been hired to endorse The Scene, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

*Defendants' Business*

36.     Upon information and belief, Bullseye operates The Scene, where it engages in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

37.     Upon information and belief, and in furtherance of its promotion of The Scene, Bullseye owns, operates and controls The Scene's social media accounts, including the The Scene's Facebook, Twitter, and Instagram accounts.

38.     Bullseye uses the The Scene's Facebook, Twitter, and Instagram accounts to promote The Scene, and to attract patrons thereto.

39.     Bullseye does this for its own commercial and financial benefit.

40.     Bullseye has used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that these Plaintiffs either worked as a strippers at The Scene, or endorsed The Scene.

41.     Bullseye used Plaintiffs' Images, and created the false impression that they worked at or endorsed The Scene in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

42.     As Bullseye was at all times aware, at no point has any of the above named Plaintiffs ever been affiliated with or employed by The Scene and at no point have any of the Plaintiffs ever endorsed The Scene.

43.     All of Bullseye's activities, including its theft of Plaintiffs' Images, and

publication of same, were done without the knowledge or consent of Plaintiffs, and Bullseye did not compensate Plaintiffs for its use of their Images.

44.     As such, Plaintiffs have never received any benefit for Bullseye's use of their Images.

**Standard Business Practices in the Modeling Industry**

53.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

54.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

**Defendant's Theft of Plaintiff's Images**

55.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs privacy by using Plaintiffs Images for commercial purposes in order to promote The Scene by and through various marketing and promotional mediums including, without limitation, The Scene's Twitter, Facebook, and Instagram pages.

56.     Defendants showcased Plaintiffs' Images on The Scene's social media in order to create the false impression that Plaintiffs worked at The Scene, or endorsed The Scene.

57.     Defendants did so in order to attract clientele to The Scene, promote The Scene,

and thereby generate revenue for Defendants.

58.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed The Scene's.

59.     Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.  This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are each strippers.

60.     At no point were any of the Plaintiffs ever affiliated with The Scene, or Defendants.

61.     Each of Plaintiffs' Images was used without her consent.

62.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

63.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

64.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including The Scene's social media accounts.

65.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

66.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.:
### False Endorsement)

67.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

68.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq***.** apply to Defendants, and protect Plaintiffs from the conduct described herein.

69.     Defendants used Plaintiffs Images in order, *inter alia*, in order to create the false impression with the public that Plaintiffs either worked at The Scene, or endorsed the Club.

70.     This was done to promote and attract clientele to The Scene, and thereby generate revenue for the Defendants.

71.     Thus, this was done in furtherance of Defendants' commercial benefit.

72.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed, The Scene, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with The Scene.

73.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at The Scene.

74.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of The Scene, and the goods and services provided by The Scene.

75.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

- 11 -

## SECOND CAUSE OF ACTION
### (Violation of N.Y. Civ. Rights Law §§ 50-51)

76.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

77.     As set forth herein, Defendants have violated N.Y. Civil Rights Law §§ 50-51 by invading Plaintiffs' privacy, misappropriating their likeness, and publishing on The Scene's website or related social media accounts altered Images of Plaintiffs, which made it appear as though Plaintiffs were employed at The Scene, or endorsed The Scene.

78.     At all relevant times, The Scene's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

79.     The Scene's website and social media accounts were designed to attract business to The Scene and generate revenue for Defendants.

80.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for The Scene.

81.     At no point did any Defendant ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Image on their website or social media account.

82.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote The Scene.

83.     At no point did Defendants ever compensate Plaintiffs for its use of their Images.

84.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

85.     Due to Defendants' violation of Plaintiffs' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Plaintiffs has been damaged in an amount to be

determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

86.     In addition, and pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby requests an Order permanently enjoining Defendants from violating Plaintiffs' right to privacy and publicity.

87.     In addition, and likewise pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of their statutory rights to privacy and publicity.

## THIRD CAUSE OF ACTION
### (Violation of N.Y. General Business Law § 349: N.Y. Deceptive Trade Practices Act)

88.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

89.     Defendants operated the The Scene's website and social media accounts in order to promote The Scene, to attract clientele thereto, and to thereby generate revenue for Defendants.  As such, Defendants' operation of the websites and social media accounts, and their publication of Images thereon, was consumer-oriented in nature.

90.     Defendants published Plaintiffs' Images on The Scene's website and social media accounts in order to create the false impression that Plaintiffs were either strippers working at The Scene, or endorsed The Scene.

91.     As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with The Scene.

92.     As Defendants were at all times aware, Plaintiffs never worked at The Scene,

never endorsed The Scene, and never had any affiliation with The Scene.

93.    Defendants' publication of Plaintiffs' Images was done without any Plaintiffs' consent and was misleading in a material respect because it created the impression that Plaintiffs were strippers working at The Scene, or endorsed same.

94.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on The Scene's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

95.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have  been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## FOURTH CAUSE OF ACTION
### (Defamation)

96.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

97.    As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote The Scene to the general public and potential clientele.

98.    Defendants' publication of said Images constitutes a representation that Plaintiffs were either employed by The Scene, that they endorsed The Scene or that they had some affiliation with The Scene.

99.    None of these representations were true.

100.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at The Scene or endorsed same.

- 14 -

101.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by The Scene, had no affiliation with The Scene, had not consented to the use of their Images, and had not been compensated for the use of their Images.

102.    In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by The Scene, had no affiliation with The Scene, had not consented to the use of their Images, and had not been compensated for the use of their Images.

103.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

104.    Defendants' publication of Plaintiffs' Images constitutes defamation under New York law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

105.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

106.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication

- 15 -

of the Images support.

107.     Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

108.     Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

**FIFTH CAUSE OF ACTION**
**(Negligence and *Respondeat Superior*)**

109.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

110.     Upon information and belief, Defendants were negligent in their failure to promulgate policies and procedures concerning the misappropriation of the Images of models that were used on The Scene's website and social media accounts.

111.     Said failure was the proximate cause of the harm Plaintiffs suffered when their Images were published without their authorization.

112.     In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of Images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with Federal and New York law, were not violated.

113.     In addition, Defendants had a duty to refrain from appropriating the Images of those with whom it had not contracted, and had not paid.

114.     Defendants violated said duty by its negligent hiring, screening, retaining,

supervising, and/or training of its employees and agents.

115.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Conversion)

116.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

117.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests therein.

118.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

119.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

120.    Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

121.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote The Scene's to the general public and potential clientele.

122.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at The Scene, or endorsed same.

- 17 -

123.     Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

124.     Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

125.     Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to The Scene.

126.     Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

127.     As such, Plaintiffs have been damaged in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

## EIGHTH CAUSE OF ACTION
### (Quantum Meruit)

128.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

129.     Plaintiffs are each world famous models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

130.     Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

131.     Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at The Scene, or endorse The Scene, Defendants have not compensated Plaintiffs.

132.    Plaintiff is therefore entitled to reasonable compensation for the Clubs'
unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

133.    Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against
Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, but in all events not less
than seventy-five thousand dollars ($75,000.00), relating to Plaintiffs' first through eighth causes
of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to
promote The Scene;

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this
Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       January 30, 2016

THE CASAS LAW FIRM, P.C.

By: /s/ John V. Golaszewski
    John V. Golaszewski, Esq.
    1745 Broadway, 17th Floor
    New York, New York
    T: 855.267.4457
    F: 855.220.9626

    *Attorneys for Plaintiffs*

- 19 -